IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: § § § | | |
| PROCESS PROPERTY CORP., § § | Case No. 04-44782-DML-11 | |
| § § | | |
| DEBTOR § § | | |
| IN RE: § § § | Case No. 04-49036-DML-11 | |
| PROCESS GRAPHIC SERVICES, INC., § § § | Jointly Administered Under Case No. 04-44782-DML-11 | |
| DEBTOR § § | | |

## MEMORANDUM OPINION

The court today determines the proper interest rate for oversecured, nonconsensual lienholders for interest accrued postpetition under 11 U.S.C. § 506(b). Before the court are Process Property Corp. and Process Graphic Services, Inc. ("Debtors"), who request that the court apply a rate of .5% per month interest on unpaid business personal property taxes. Tarrant County, Dallas County, and the Arlington Independent School District (collectively the "Taxing Authorities") argue that the court should apply the state statutory tax delinquency rate as the postpetition interest rate.

The court held a hearing on confirmation of Debtors' chapter 11 plan ("Plan") on February 17, 2005. During the hearing the court received exhibits from the parties and heard testimony from Mitch Robertson, Process Graphic's principal, and Allyn Bryant

Memorandum Opinion – Page 1

Needham,[1] an economist. At the close of the hearing the court confirmed the Plan while reserving determination of the postpetition interest rate for the taxes. At the court's suggestion Debtors and the Taxing Authorities submitted post-hearing briefs on the matter.

This is a core proceeding over which this court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(2)(B). This memorandum opinion constitutes the court's finding of facts and conclusions of law. FED. R. BANKR. P. 7052 and 9014.

## I. BACKGROUND

Process Property Corp. was formed in November 1995 and owned the building that is occupied by Process Graphic. The sole shareholder of Process Property Corp. is Billy J. Robertson. Process Graphic is in the business of producing high-end print material. The sole shareholder of Process Graphic is Mitch A. Robertson. The company provides finishing and converting services to the printing and packaging trades. In 1998 Process Graphic acquired a competing company to expand Process Graphic. This expansion proved to be a mistake.

Debtors began showing signs of financial trouble in late 2002. Competition from smaller firms began to have a detrimental effect on Process Graphic. In addition to this competition, many larger printing firms began to offer the same services that Process Graphic offers. The combination of these factors began to strain Process Graphic. This in turn had an adverse effect on Process Property, which received as its only source of income the rent paid by Process Graphics.

---

[1] Mr. Needham appeared as an expert for Debtors.

Unsuccessful in resolving its problems and delinquent in payment of its debts, Process Graphic filed for protection under chapter 11 of the Bankruptcy Code[2] (the "Code") on May 10, 2004. On September 16, 2004, Process Property also filed chapter 11. Shortly thereafter the court granted a motion for joint administration of the cases.

At the time of the filing, the ad valorem taxes claimed by the Arlington Independent School District were $298,581.58 for real and business personal property from Process Graphic. Tarrant County claimed $74,737.64 was owed it by Process Graphic and $14,141.19 by Process Property. Dallas County claimed $144,809.13 from Process Graphic and $14,637.58 from Process Property. On or about January 31, 2005, the real estate taxes owed by Process Property for the year 2004 were paid by a third party. Pursuant to Texas law, the claims of the Taxing Authorities are secured by statutory lien. TEX. TAX CODE ANN. § 32.01 (2004). Therefore, the Taxing Authorities assert a first priority claim against property owned by Process Graphic.

Following a hearing on a 11 U.S.C. § 505 motion by the Taxing Authorities on May 20, 2005, the value of the business personal property of Process Graphics was found to be $3,040,300.00. This is substantially higher than the amount claimed by the Taxing Authorities.[3]

Debtors filed a plan of reorganization on September 21, 2004. The Taxing Authorities objected to the Plan on the basis that they were to be paid interest below the Texas statutory delinquency rate. The court confirmed the Plan but withheld a determination of the postpetition interest rate owed to the Taxing Authorities. Both

---

[2] 11 U.S.C. §§ 101–1330 (2005), *amended by* 11 U.S.C. §§ 101–1532 (as enacted Apr. 20, 2005).

[3] Prior to the § 505 motion and hearing, the Debtors had commissioned an appraisal of the value of the business personal property of Process Graphics. This appraisal lists the auction value as $1,978,892 and the real property value between $2.9 million and $3.35 million.

Memorandum Opinion – Page 3

parties submitted briefs in support of their arguments and each was duly considered by the court.

## II. DISCUSSION

### A. The Taxing Authorities Are Entitled to Interest Pursuant to § 506(b)

Section 506(b)[4] of the Code provides for interest and any "reasonable fees, costs, or charges" to be allowed. Section 506(b) applies only to post-petition accretions. While prepetition interest and fees may be allowable as part of the underlying secured claim, the standard for allowance of postpetition interest, fees and expenses under section 506(b) is established by federal law. *See* § 506(b); *Rake v. Wade*, 508 U.S. 464, 468 (1993).

The Taxing Authorities are entitled to interest on their claims from the date Debtors filed for bankruptcy protection.[5] The issue before the Court in *Ron Pair* was whether § 506(b) of the Code entitles a creditor to receive interest on an oversecured claim. The court held that section 506(b) entitles a creditor to receive postpetition interest on consensual and nonconsensual oversecured claims that are allowed in the bankruptcy proceedings.

While the Supreme Court in *Ron Pair* established that interest accrues on secured tax claims, the Court gave no guidance as to the correct rate. In this case the creditors are substantially oversecured and hold liens created by operation of law. These types of liens fall within the analysis of *Ron Pair,* and, thus, in the case at bar the Taxing Authorities

---

[4] Code § 506(b) reads as follows:

> To the extent that an allowed secured claim is secured by property the value of which after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

[5] *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 245 (1988)

Memorandum Opinion – Page 4

are entitled to postpetition interest on their claims. The court must now establish the correct rate of interest. At least with respect to postpetition, preconfirmation interest, this appears to be an issue of first impression.

**B.     Post-Petition Interest Under Section 506(b)**

As noted above, the Taxing Authorities urge the court to apply the interest rate established by Texas statute. The only rate provided by Texas law is a rate assessed for delinquent taxes. The Taxing Authorities argue that this higher rate of 12 percent annually is required to compensate the Taxing Authorities for lost revenue. In addition the Taxing Authorities argue that they are not commercial lenders and are not able to use any determination of credit risk when dealing with the public.

The Taxing Authorities argue that that they should be allowed to claim the delinquency interest rate because of their special position as government entities which are bound by state statute. While such may be the case in proceedings outside bankruptcy, once a debtor has invoked the protection of the Bankruptcy Code, the debtor's estate comes under the protection of the court. "The source of the lien does not control the interest rate; rather it is the Bankruptcy Code itself which is the genesis of an oversecured creditor's entitlement to interest out of estate assets, regardless of the source of the lien." *In re Kelton,* 137 B.R. 18, 20 (Bankr. W.D. Tex. 1992).[6] The *Kelton* court thus concluded that the taxing authority is entitled to no better or worse treatment than any other creditor holding a claim that is fully secured, even if the lien arose by operation of law. *Id.*

---

[6]     When Congress wishes to specify application of state law to claims it acts affirmatively. *See,* e.g. Code §§ 1123(d), 1222(d) and 1322(e).

Memorandum Opinion – Page 5

Because postpetition interest rates for both consensual and nonconsensual oversecured creditors are allowable pursuant to the Code, other courts' treatment of one will be instructive of what rate should be allowed for the other. This court has previously ruled that "the [creditor] should receive interest at the default rate unless application of a lower rate is found proper upon the balancing of the equities". *In re Cummins Util., L.P.*, 279 B.R. 195, 202 (Bankr. N.D. Tex. 2002) (citing *Southland Corp. v. Toronto-Dominion (In the Matter of Southland Corp.)*, 160 F.3d 1054, 1060 (5th Cir. 1998)); *Bradford v. Crozier (In re Laymon)*, 958 F.2d 72, 75 (5th Cir. 1992) ("this case must be decided by examining the equities involved in this bankruptcy proceeding."). *In re Cummins* dealt with the default interest rate under a note. *In re Cummins Util., L.P.*, 279 B.R. 195, 202 (Bankr. N.D. Tex. 2002). In that case this court took into account the facts and circumstances of the case to balance the equities and found that the default interest rate should not be used. *Id.* In *Southland* the Court of Appeals stated that there was no specific list of factors that was to be used exclusively to rebut the usage of a higher default rate of a contract. *See In re Southland, 163 F.3d* at 1060.

While *In re Cummins* and *In re Southland* dealt with the default rate under a note and the case at bar deals with the delinquency rate set by statute, the court finds the cases to be analogous. In each situation it is a default by the obligor-debtor that results in the potential for a higher rate.

As in the case before the court today, *In re Cummins* was concerned with the risk of dealing with a debtor while in bankruptcy. The secured creditors in that case claimed that once the debtor was in bankruptcy their risk would be greater. They argued that this increased risk justified charging the default interest rate. The court found that, contrary

Memorandum Opinion – Page 6

to their concerns, the Code provided multiple layers of protection above and beyond what would normally be available to secured creditors outside of bankruptcy. Once in bankruptcy the Code provided for oversight of the debtor by way of the United States Trustee as well as the court itself. The Supreme Court has expressed a similar view. *Till v. SCS Credit Corp. (In re Till)*, 541 U.S. 465, 470 (2004).

Indeed, a debtor in possession serves as a fiduciary, a trustee for creditors. *See In re Gregory*, 214 B.R. 570, 575 (S.D. Tex. 1997) ("Section 1107(a) of the Bankruptcy Code provides that the debtor-in-possession occupies basically the same position as a bankruptcy trustee and, as a result, assumes certain fiduciary duties to the estate and the creditors"). Here, Debtors have a fiduciary responsibility for management and maintenance of their estate with the interests of creditors, including the Taxing Authorities, as their primary concern. *See Till v. SCS Credit Corp. (In re Till)*, 541 U.S. 465, 470 (2004). (*See Dodson v. Huff (In re Smyth)*, 207 F.3d 758, 761 (5th Cir. 2000), the trustee has a fiduciary duty of loyalty; *Gross v. Russo (In re Russo)*, 762 F.2d 239, 243 (2nd Cir. 1985), the fiduciary duty of a trustee extends to after the debtor comes out of bankruptcy.)

The Taxing Authorities also base their argument for use of the statutory rate postpetition and preconfirmation on the risk that the Debtors will in some way harm or diminish the value of the collateral. For the reasons stated above, the Taxing Authorities are likely in a better position to protect their claim while the Debtors are in bankruptcy, than if they are not. This being the case, the court finds the Taxing Authorities' argument that the higher rate should apply because of the added risk from Debtors' chapter 11 unpersuasive.

The Court of Appeals for the Fifth Circuit also addressed when a default interest rate should be used rather than the contract interest rate.[7] In *In re Southland* the Court looked at several equitable factors in making its determination. In its analysis the Court concluded "The very purpose of equity is to exalt the individual circumstances of a case over law's hard and fast rules." *In re Southland*, 160 F.3d 1054, 1060. Although the issue in *In re Southland* was whether a delinquent penalty rate should be applied in lieu of the contract rate, the same considerations must here be addressed in deciding whether Debtors' estate should be charged a penalty rate.

The *Southland* Court determined "there is no set list of equitable factors to consider..." in deciding this issue. *Id.* In its discussion on the equities, the Court found that "the 2% spread between default and pre-default interest rates [of the contract] is relatively small." *Id.* The rate argued for by the Taxing Authorities in the case before the court today is to 12% per annum, whereas if the Debtors had not been delinquent in payments no interest at all would have accrued.

This brings the court to the most important aspect of the inquiry when examining the equities. As the Fifth Circuit laid out in *In re Southland*, the impact upon other creditors is the most important issue in deciding whether a default interest rate should apply. *Id* at 1060. *See also In re Cummins Util. L.P.*, 279 B.R. at 204, (the impact on other creditors is the most important issue). The *Southland* Court was ultimately persuaded to allow the default rate because, significantly, creditors would not be harmed. *In re Southland*, 160 F.3d at 1060.

In this case, the collateral is encumbered by lienholders junior to the Taxing Authorities' lien. In addition, unsecured creditors will be paid over time under the Plan.

---

[7] *Southland Corp. v. Toronto-Dominion (In re Southland)*, 160 F.3d 1054 (5th Cir. 1998).

Memorandum Opinion – Page 8

The Debtors have multiple levels of classes in the Plan. Each class calls for varying repayment plans. If the Taxing Authorities were allowed the higher delinquency interest rate it would be detrimental to the larger body of creditors of the Debtors. This is in contrast to *In re Southland*, and thus equity favors not applying the statutory delinquency rate. While declining to apply the delinquency rate appears to benefit the Debtors, it also improves the Debtors' chances of performing and so improves the chance that other creditors will receive the consideration promised by the Plan.

The purpose of section 506(b) is to ensure that the creditor receives the full value of its claim. In a cramdown the creditor is entitled to the value of its claim as of the petition date. *See Chase Manhattan Bank U.S.A. v. Stembridge (In re Stembridge)*, 394 F.3d 383, 388 (5th Cir. 2004) (holding that a creditor is entitled to the value of its secured claim as of petition date under §1325(a)(5)). Additionally, the Code provides protection under section 361 to maintain value to the creditor. The Code does not, however, provide the creditor an opportunity to enhance its secured claim postpetition through an artificially high postpetition preconfirmation interest rate. To do so would reduce the potential return to other creditors in order to prefer the secured creditor. In the case at bar, the statutory delinquency rate would provide the Taxing Authorities with a return in excess of the present value of their claims. The Code militates against enhancement of a creditor's claim such that the creditor receives more than the value of its claim as of the petition date. 11 U.S.C. § 502. As distinguished in *In re Stembrigde*, "the code entitles the secured creditor to the present value of its claim at the institution of the automatic stay." *In re Stembridge*, 394 F.3d at 387.

Memorandum Opinion – Page 9

Upon consideration of all the equities, the court declines to apply the statutory delinquency rate to the postpetition interest. To apply the state's delinquency rate would artificially inflate the Taxing Authorities' claims. Rather than receiving the amount of their secured claims as of the petition date, the Taxing Authorities would receive a premium.

**C. Proper Interest Rate to Be Applied**

The Taxing Authorities' lien is nonconsensual in that it was created by operation of law and the interest rate prescribed is by statute and is applied if the tax is delinquent.

Section 33.01(c) of the Texas Tax Code reads:

> A delinquent tax accrues interest at a rate of one percent for each month or portion of a month the tax remains unpaid. *Interest payable under this section is to compensate the taxing unit for revenue lost because of the delinquency.* A delinquent tax continues to accrue interest under this subsection as long as the tax remains unpaid, regardless of whether a judgment for the delinquent tax has been rendered.

TEX. TAX CODE ANN. § 33.01(c) (2004) (emphasis added).

The court finds that "where there is no underlying contractual interest rate provision (but even where there is an applicable state statutory rate), the bankruptcy court has discretion to set an interest rate equitably appropriate to the circumstances of each case." *Fischer Enters. v. Geremia (In re Kalian)*, 178 B.R. 308, 312 (Bankr. R.I. 1995).

Most statutory schemes for interest rates were set years ago and in no way take into account the varied considerations that the bankruptcy court would look to in equity to determine a proper interest rate. In Texas, section 33.01 of the Tax Code was most recently amended by the 75th session of the Texas legislature in 1997. However, this section of the Tax Code has not been altered in pertinent part since at least 1992.[8]

---

[8] The only alteration to the Texas Tax Code §33.01(a), (b) & (c) since 1992 is the addition of the

Memorandum Opinion – Page 10

In order for an interest rate to be equitable the rate would have to balance the interests of the parties. In this case the statutory rate considers the interests of the Taxing Authorities only and not the interests of the Debtors and their other creditors. The court must then find a rate which accounts for the competing interests.

By analogy the court looks to the Fifth Circuit decision in *Lambert v. Miss. State Tax Comm. (In re Lambert)*, 194 F.3d 679 (5th Cir. 1999). *In re Lambert* concerned the proper interest rate for a taxing authority in a cramdown. In *Lambert* the Court used the market rate as the basis for determining the proper interest rate. *Id.* at 680. The Court determined that the correct rate to apply would be "the current market rate equivalent to the rate the debtor would have to pay to borrow the same amount in the commercial market." *Id.* at 684. The Fifth Circuit considered the length of payout, quality of security, and the risk of subsequent default to the current risk-free rate for similar loans. *Id.* at 681. *Lambert*, for these purposes, is consistent with *Till v. SCS Credit Corp. (In re Till)*, 541 U.S. 465 (2004). Though the court is concerned with the postpetition, preconfirmation interest, the analysis of *In re Lambert* is helpful. The use of the market rate would fairly take into account what is generally considered a proper rate by a borrower.

The court therefore concludes it proper to use the market prime rate reported daily in the national papers as the base interest rate. Because the Debtors are not prime

---

following. Subsection (a) was amended to include "A delinquent tax continues to incur the penalty provided by this subsection as long as the tax remains unpaid, regardless of whether a judgment for the delinquent tax has been rendered" as the last sentence. Subsection (c) was amended to include "A delinquent tax continues to accrue interest under this subsection as long as the tax remains unpaid, regardless of whether a judgment for the delinquent tax has been rendered" as the last sentence. Subsections (d) and (e) were added in 1997 and are not pertinent to the case at bar.

Memorandum Opinion – Page 11

borrowers it is then necessary to adjust the rate of interest upwards to account for the Debtors' risk.

The court next looks to the *Till*[9] case for guidance in determining the interest rate increase in the present case. In *Till*, the Supreme Court ruled that in a chapter 13 cramdown, an interest rate increase from prime of 1% to 3% is acceptable. *Id.* at 480. The Court found that such a rate increase would reflect the rate that the debtor would receive in the commercial market. *Id.* at 479. Like the prime rate itself, a market rate which takes into account an increase for risk properly balances the interests of the parties. *Id.* at 480.

At the confirmation hearing, the court heard the testimony of Mitch Robertson. During Mr. Robertson's testimony he stated that Process Graphic keeps three full-time mechanics on staff to maintain the equipment in the shop. Mr. Robertson further stated that the value of the equipment would be maintained until at least the end of the Plan. According to Mr. Robertson's testimony, the Debtors do not appear to have problems collecting receivables and Debtors' revenue does not appear to be decreasing. Mr. Robertson testified that the Debtors do not appear to have problems on the horizon that would preclude them from meeting their obligations under the Plan. Further, Mr. Robertson testified that the appraised value of the collateral securing the claims of the Taxing Authorities is much greater than those claims. The collateral is insured, with junior lien holders designated as loss payees. In the event of a default the Taxing Authorities would have priority over the junior lien holders and would be able to foreclose on the property; and the value of the property would far exceed the Taxing

---

[9] 541 U.S. 465

Authorities' claims. The court therefore views the Debtors as relatively low risk. In light of this, the court thinks that an increase of 1.5% over prime would be appropriate.

### III. Conclusion

This court determines on the facts before it that the prime rate is the proper base rate for determining the interest rate for oversecured, nonconsensual lienholders postpetition and preconfirmation. The base rate must then be adjusted upwards according to the risk of the debtor. In this case the court believes that an increase of 1.5% to be appropriate for these Debtors. Because, at the time the Debtors' petitions were filed, it was unclear what rate would be used, the court uses the prime rate as of today as the base. According to the Federal Reserve, the prime rate is 6%.[10] This results in a total rate of 7.5%. Because the Debtors filed their bankruptcy petitions several months apart from one another and later moved to have them jointly administered, the postpetition interest will accrue at the rate ordered from the later of the date of each Debtor's filing or the inception of its delinquency for the taxes claimed.

Finally, the rate used for calculating post-petition interest under 506(b) will be the same interest rate applied to the Taxing Authorities claims under the confirmed Plan.

**IT IS SO ORDERED THIS 9th DAY OF JUNE 2005.**

_____
DENNIS MICHAEL LYNN
UNITED STATES BANKRUPTCY JUDGE

---

[10] Prime Rate as of 5/29/2005 taken from the Federal Reserve website. *See* http://www.federalreserve.gov/releases/h15/data/d/prime.txt

Memorandum Opinion – Page 13